IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ALYNDA CROSSIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06-3014 |
| | ) |
| THE CITY OF ATHENS, | ) |
| ILLINOIS, a Municipal | ) |
| Corporation, and | ) |
| DEBRA RICHARDSON, | ) |
| | ) |
| Defendants. | ) |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant City of Athens, Illinois (City) and Defendant Debra J. Richardson's Motion for Summary Judgment (d/e 15) (Defendants' Motion). Defendant Richardson is Mayor of the City. She is sued in both her individual and official capacities. Plaintiff Alynda Crossin filed this lawsuit under 42 U.S.C. § 1983 claiming that she was terminated from her employment with the City in retaliation for exercising her First Amendment rights. Crossin alleges that she was relieved of her duties as Treasurer of the City because she spoke out on a

1

matter of public concern. The Defendants now move for summary judgment. For the reasons set forth below, the Defendants' Motion for Summary Judgment is ALLOWED.

## STATEMENT OF FACTS

Crossin began her employment with the City in November 1993, initially as a secretary and then later as office manager. Sometime in 1996, she was appointed the Treasurer of the City by then Mayor George Cerar. As the City Treasurer, Crossin (rather than the Mayor) was responsible for managing financial accounts of City funds, maintaining the City's financial records up-to-date, reconciling the City's bank accounts, making deposits of all City funds, and accounting for all funds going in and out of the City's checking accounts. Crossin was also in charge of attending committee meetings and making monthly presentations to the City Council concerning the City's finances. Crossin supervised and worked directly with Amanda Oller, who was the office assistant. Both Oller and Crossin reported to the Mayor.

On October 14, 1996, by City Ordinance, the Office of the Treasurer became an appointed position. According to the Ordinance, the Mayor had the authority to fill the Treasurer position by appointment, subject to the

advice and consent of the City Council.  <u>Defendants' Motion</u>, Exh. 2, Exh. A, <u>Ordinance</u>.  Crossin's employment with the City was at-will, which meant that the City could terminate Crossin's employment for any reason.  In May 2001, Defendant Richardson was elected Mayor of the City.  On November 24, 2001, Crossin received a copy of the Employee Handbook and signed an employee acknowledgment form, which provided that her employment could be terminated at will, with or without cause, at any time, so long as there was no violation of applicable federal or state law.

According to Mayor Richardson, Crossin's failure to work in a cooperative and cordial manner began in 2002.  Mayor Richardson testified that Crossin was deficient in keeping the City's financial records current and in reconciling the various bank accounts of the City.  From about 2001 through 2002, Crossin worked with Kyle McGinnis (a certified accountant who served as the Auditor of the City for approximately 25 years) on a monthly basis, during which time McGinnis checked and reviewed Crossin's work, and assisted Crossin with bank reconciliation.  McGinnis began reviewing Crossin's work because he had observed numerous mistakes made by Crossin when he conducted yearly audits of the City.  In order to reduce the time spent in correcting Crossin's work during yearly audits,

McGinnis requested that he be allowed to review Crossin's work once a month, which request was granted.

In October 2002, Mayor Richardson hired Phillip Schaefer to perform bookkeeping work. Schaefer was then responsible for updating the City's bank accounts, reconciling the accounts, and posting activities to the accounts. Beginning in 2003, McGinnis turned over his monthly bookkeeping responsibilities to Schaefer, which included, among other things, checking and reviewing Crossin's work on a monthly basis, and preparing update reports to Mayor Richardson. McGinnis continued to work as the Auditor of the City, however.

Schaefer came to Athens once a month to assist Crossin with her work. Following his review of Crossin's work, Schaefer informed Crossin of the mistakes she had made, including interest not being recorded, checks not being properly recorded, items missing from the deposits that were not recorded, and mathematical errors. According to Schaefer, Crossin repeatedly made the above-noted mistakes.

On August 14, 2003, City Alderman Harry Nichols and Mayor Richardson met with Crossin to discuss problems concerning her relationship problems with Oller and her poor demeanor and disrespect of

others at work.  Mayor Richardson and Nichols hoped that, as a result of the meeting, Crossin would improve her demeanor and job performance. Mayor Richardson stated that she spoke to Crossin about her poor job performance on about 15 occasions.

From the spring of 2003 until November 2003, the City's Police Department was involved in drug sting operations in Athens, which led to several arrests.  The Police Department and the City Council agreed to create a fund called "Keep Athens Clean" (hereinafter Fund) at the Athens State Bank to help fund a drug sting operation in Athens called "Operation Thunder."  On November 21, 2003, a letter to the editor was published in the Menard County Review and the State Journal-Register, informing the public about the creation of the Fund and seeking contributions to help fund the drug sting operation.  The drug sting operation was initiated by the Police Department's Officer David Baker, who advised Mayor Richardson not to disclose the existence of the Fund to Crossin because her children were suspected of being involved in illegal drug activities.  Mayor Richardson opened an account for the Fund at the Athens State Bank on December 2, 2003.

In early December 2003, due to suspicion that Crossin was drunk at

work, Mayor Richardson directed Crossin to take a breathalyzer test, which she refused. Crossin stated that she was humiliated by the incident. On December 8, 2003, Crossin's performance problems were discussed extensively at a City Council executive session; Crossin had failed to submit a reconciled financial statement to the City Council, which was needed for planning and budgeting purposes. During the session, one alderman suggested that Crossin should be terminated from her employment with the City. At the session, Mayor Richardson also related to the City Council about the breathalyzer incident and asked Oller, who was present at the meeting, to discuss her concerns about Crossin.

According to Mayor Richardson, she made up her mind about her decision to discharge Crossin in early December 2003. Mayor Richardson, however, did not express her decision to the City Council in either the December 2003 executive session or the following executive session, which was held sometime on January 8 or January 12, 2004.

On either January 19 or January 21, 2004, while at work, Crossin discovered a deposit slip of an account with which she was unfamiliar. She therefore questioned Mayor Richardson about it because, as the City Treasurer, she was responsible for keeping account of all City funds.

Crossin asked Mayor Richardson whether an account should be set up on the City's general ledger, and Mayor Richardson responded that she had already done so and that she and Chief of Police Matt Duncheon would be the persons responsible for the account. In her capacity as the City Treasurer, Crossin advised Mayor Richardson that the Fund should be accounted for on the City's general ledger. Mayor Richardson, however, related that either Schaefer or McGinnis had approved of her actions in creating the account and keeping it under her control.

      Dissatisfied with Mayor Richardson's response, Crossin contacted Schaefer and McGinnis, informing them about the matter and expressing that the Fund should be recorded on the City's general ledger. Both Schaefer and McGinnis identified with her concerns. According to Crossin, McGinnis told her that he had not discussed the Fund with Mayor Richardson. Also on that same day, Crossin contacted Alderman Nichols, voicing her concerns about the matter, and Nichols (who pretended that he did not know anything about the Fund, although he did) responded that he would talk to Mayor Richardson about the issue. Nichols related to Crossin the following day that he had talked to Mayor Richardson about the Fund and about Crossin's concern that the Fund was not accounted for on the

City's general ledger.  It was the first time Crossin had talked to an alderman about a matter concerning City funds.

On January 22, 2004, a citizen complained about the rude manner in which Crossin answered phone calls, and the way in which she acted in person.  On January 23, 2004 (approximately 3 days after Crossin's conversations with Schaefer, McGinnis, and Alderman Nichols), Mayor Richardson terminated Crossin's employment with the City.  Crossin was not given any reasons for her discharge.  Mayor Richardson stated that her decision to discharge Crossin was due in part to her poor demeanor and work performance. Mayor Richardson stated that the rude and disrespectful manner in which Crossin questioned the Fund was the "last straw" that prompted her to fire Crossin.  Defendants' Motion, Exh. 3, Deposition of Debra Richardson (Richardson Dep.), at 44.

By a letter dated January 28, 2004, Crossin sought the specific reasons for her termination from the City.  Defendants' Motion, Exh. 7, Exh. B, Crossin's Letter to Mayor.  By a letter dated February 3, 2004, Mayor Richardson formally informed both the City Council and Crossin of the termination of Crossin's employment and the reasons for the

8

employment decision.[1]  On February 9, 2004, the City Council voted to terminate Crossin's employment.  Crossin states that she was discharged in retaliation for expressing her concerns about the Fund not being properly accounted for on the City's general ledger.  On January 23, 2006, she filed suit in this Court against the City and Mayor Richardson.  The Defendants move for summary judgment.

## ANALYSIS

At summary judgment, the Defendants must present evidence that demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The Court must consider the evidence presented in the light most favorable to Crossin.  Any doubt as to the existence of a genuine issue for trial must be resolved against the Defendants.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Once the Defendants have met their burden, Crossin must present evidence to show that issues of fact remain with respect to an issue essential to her case, and on which she will bear the burden of proof at trial.  Celotex Corp.,

---

[1]The letter identified three reasons for Crossin's discharge.  It noted Crossin's inability to maintain the City's financial records up-to-date, inability to reconcile the City's bank accounts, and her failure to "work in a cooperative, cordial and respectful manner with [the Mayor.]"  Defendants' Motion, Exh. 3A, Richardson's Letter dated February 3, 2004.

9

477 U.S. at 322; <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). When viewed in the light most favorable to Crossin, the Defendants are entitled to summary judgment.

The Defendants argue that Crossin cannot make out a First Amendment retaliation claim because her speech did not touch upon a matter of public concern and because her speech was not a motivating factor that contributed to the City's decision to terminate her employment. The Defendants contend, further, that Crossin's claim against Mayor Richardson is barred by the doctrine of qualified immunity.

The Supreme Court has established a two-part inquiry to determine if speech is constitutionally protected. <u>Pickering v. Bd. of Educ. of Township High Sch. Dist. 205</u>, 391 U.S. 563 (1968); <u>Connick v. Myers</u>, 461 U.S. 138 (1983). "Under the *Connick-Pickering* test, a public employee can establish that [her] speech is constitutionally protected if (1) the employee spoke as a citizen on matters of public concern, and (2) the interest of the employee as a citizen in commenting upon matters of public concern outweighs the interest of the State as an employer in promoting the efficiency of the public services it performs through its employees." <u>Sigsworth v. City of Aurora</u>, ___F.3d___, 2007 WL 1518536, at *2 (7th Cir.

10

May 25, 2007). The Supreme Court in Garcetti v. Ceballos has recently clarified the standard regarding "when a public employee speaks as a citizen for First Amendment purposes." Id. at *3; see Garcetti, 126 S.Ct. 1951 (2006).

Under the pre-Garcetti standard, courts were required to determine first whether a public employee's speech at issue addressed a matter of public concern by considering the content, form and context of the speech, with content being the most important factor. Spiegla v. Hull, 481 F.3d 961, 965 (7th Cir. 2007) (citing cases); see also Mills v. City of Evansville, 452 F.3d 646 (7th Cir. 2006). In the wake of Garcetti, however, the threshold inquiry is whether the employee's expressions were made pursuant to her official duties and, if so, the speech is not constitutionally protected. Spiegla, 481 F.3d at 965; see also Wilburn v. Robinson, 480 F.3d 1140, 1149-50 (D.C. Cir. 2007); Haynes v. City of Circleville, 474 F.3d 357, 363-65 (6th Cir. 2007). According to the Seventh Circuit, "*Garcetti* made clear that public employees speaking 'pursuant to their official duties' are speaking as employees, not citizens, and thus are not protected by the First Amendment regardless of the content of their speech." Spiegla, 481 F.3d at 965 (citing Garcetti, 126 S.Ct. at 1959-60). The Seventh Circuit further

explained that "focus[ing] on 'core' job functions is too narrow after *Garcetti*, which asked only whether an 'employee's expressions [were] made pursuant to official responsibilities.'" Id. at 966 (quoting Garcetti, 126 S.Ct. at 1961). If the answer to the threshold inquiry articulated by Garcetti is yes, then Crossin's First Amendment retaliation claims fail.[2]

Applying the standard articulated in Garcetti, Crossin's First Amendment retaliation claims against the City and Mayor Richardson fail because the undisputed evidence shows that Crossin's expressions were made pursuant to her official job responsibilities. The undisputed evidence shows that, as the City Treasurer, Crossin was responsible for keeping account of all city funds and recording all city funds on the City's general ledger. When Crossin discovered a deposit slip of an account with which she was unfamiliar, she questioned Mayor Richardson about the matter and asked whether she should establish an account on the City's general ledger. The undisputed evidence demonstrates that Mayor Richardson told Crossin that she did not need to do so. Mayor Richardson related that she had already set up an account for the Fund and that it would be under her

---

[2] The Court notes its disappointment that neither attorney cited either Garcetti or Spiegla in memoranda filed with the Court, even though those cases were dispositive of the issue presented.

control.

The evidence shows that Crossin was not satisfied with this response because she believed the Fund should be properly accounted for on the City's general ledger and that she, as the City Treasurer, should have performed that function. Following her discussion with Mayor Richardson, she conveyed her concerns to Schaefer, McGinnis, and Alderman Nichols and suggested that the Fund should be recorded on the City's general ledger. In so doing, Crossin was merely performing her official duties as the City Treasurer whose primary responsibilities included, among other things, keeping account of all city funds and making a record of all accounts on the City's general ledger. When Crossin aired her concerns about the Fund, therefore, she was not speaking as a private citizen, but rather as a public employee simply doing what was expected of her as the City Treasurer. See Sigsworth, 2007 WL 1518536, at * 4 (finding that the allegations of the complaint established that the plaintiff, who was a police officer, was merely speaking as a public employee, discharging his official duties, when he aired his concerns to his supervisor about his colleague's misconduct); Spiegla, 481 F.3d at 967 (finding that the plaintiff spoke pursuant to her official duties when she reported to her supervisor about a possible security breach

by two senior prison officers).  Indeed, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." Garcetti, 126 S.Ct. at 1960.

Crossin's Response brief in fact indicates that Crossin's comments to Mayor Richardson, Schaefer, McGinnis and Alderman Nichols fell within the scope of her official responsibilities as the City Treasurer.  The Response brief states in part:

> Crossin's concern was not ego driven.  Instead she was concerned about the proper accountability of City funds.  The treasurer of a municipality is charged with responsibility of overseeing and accounting for public funds.  The fact that there may have been a "secret fund" under the control of the Mayor raised fair concern about a failing on the Mayor's part in properly accounting and maintaining public funds.  [¶ 35, 36, 37 of the Crossin Statement].
> Section 3.1-35-40 of the "Illinois Municipal Code" [65 ILCS 3.1-35-40] provides that a municipal treasurer "shall receive all money belonging to the municipality."  Sections 3.1-35-40 and 3.1-35-50 of the Act imposes duties upon the treasurer with respect to accounting for municipal funds and maintaining those funds in appropriate accounts [65 ILCS 3.1-35-40 and 3.1-35-50].  The concerns raised by Crossin involved conduct by the Mayor which possibly conflicted with these requirements [¶ 36 of the Crossin Statement].

Plaintiff's Memorandum In Opposition to the Defendants' Motion for Summary Judgment (d/e 19), at 17.  The mere fact that Crossin's comments

14

concerned the Mayor's potential mismanagement of City funds does not diminish "the fact that she was speaking pursuant to her official responsibilities, not as a citizen 'contributi[ng] to the civic discourse.'" Spiegla, 481 F.3d at 967 (quoting Garcetti, 126 S.Ct. at 1960). Crossin's speech thus does not amount to the "prototypical protected speech" identified by the Garcetti Court, such as making a public statement, discussing politics with a coworker, or writing a letter to newspapers or legislators. Id. (citing Garcetti, 126 S.Ct. at 1960-61). Based on these reasons, Crossin's First Amendment retaliation claims under § 1983 fail, and the Defendants are entitled to summary judgment.

THEREFORE, for the reasons set forth above, the Defendants' Motion for Summary Judgment (d/e 15) is ALLOWED. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: June 27, 2007.

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE